IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| BEATRICE OLDEN, | * | |
| Plaintiff, | * | |
| v. | * | CV 119-166 |
| QUALITY CARE & ADVOCACY GROUP, INC. and SANDRA TAYLOR, | * | |
| Defendants. | * | |

**O R D E R**

Before the Court is Defendants' motion for summary judgment.[1] (Doc. 37.) Plaintiff brings her claim pursuant to Section 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. 201 *et seq.* (Compl., Doc. 1, at 1, 8-9.) Plaintiff seeks recovery of unpaid overtime wages, liquidated damages, and attorney's fees and costs. (Id. at 10.) For the reasons below, Defendants' motion is **DENIED**.

**I. BACKGROUND**[2]

Quality Care & Advocacy Group, Inc. ("Quality Care") provides mental health and substance abuse outpatient care and services.

---

[1] On November 10, 2020, Plaintiff filed a motion for extension of time to file her response to Defendants' motion for summary judgment. (Doc. 43.) However, Plaintiff filed her response on the same day. (See Doc. 44.) Thus, Plaintiff's motion (Doc. 43) is **DENIED AS MOOT**.
[2] The Court discusses additional facts relevant to its analysis in Section III.

(A. McMillan Dep., Doc. 39, at 9.) Plaintiff is a registered nurse and began working for Quality Care around the end of September 2018. (Doc. 42-16, at 1.) During the time Plaintiff was employed at Quality Care, she was enrolled as a full-time nursing student at Georgia Southern University.[3] (Olden Dep., Doc. 42-1, at 7, 9.) All of Plaintiff's classes were online, and she could complete her coursework at any time. (Id. at 10.) As part of Plaintiff's studies, she was also required to complete 90 hours of work per semester at a clinical site. (Id. at 10-11.)

Plaintiff's job duties at Quality Care included performing nursing and nutritional assessments and conducting individual and group counseling sessions for Quality Care's clients. (Id. at 21, 26.) Plaintiff conducted the assessments and held counseling sessions at Quality Care, in the community, or at clients' homes. (A. McMillan Dep., at 137-38; Olden Dep., at 22, 45.)

Quality Care provided Plaintiff with a list of clients, and Plaintiff was in charge of scheduling appointments with them. (Olden Dep., at 20, 119.) Typically, Plaintiff's assessments took 30 minutes to an hour and 45 minutes. (Id. at 22.) Despite this, Plaintiff always billed two hours for her assessments. (Id. at 32, 42, 57-58.) Plaintiff also spent time driving to clients' homes, reviewing medical records, and drafting and entering her

---

[3] Plaintiff objected to this fact as not being material; however, the Court disagrees. (Doc. 44-3, at 2.)

2

notes. (Id. at 24, 108-09.) The Parties dispute how many "non-billable" hours Plaintiff worked and the total number of hours Plaintiff worked each week.

Plaintiff resigned from Quality Care on June 9, 2019. (Doc. 42-4.) On September 17, 2019, Plaintiff filed the present suit against Quality Care and Sandra Taylor[4]. (Compl.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)

---

[4] Ms. Taylor is Quality Care's registered agent. (Compl., at 2.)

3

(citation, internal quotation marks, and internal punctuation omitted). The Court may not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, as Plaintiff does here, the movant has two options as to how it can carry its initial burden. Id. at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. The non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with

4

additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all parties notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 41.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. DISCUSSION

Plaintiff argues Defendants failed to compensate her for overtime work in violation of the FLSA. "The FLSA mandates that 'no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours . . . specified at a rate not less than one and one-half times the regular rate at which he is employed.'" Reich v. Dep't of Conservation & Nat. Res.,

5

State of Ala., 28 F.3d 1076, 1081-82 (11th Cir. 1994) (quoting 29 U.S.C. § 207(a)(1)). To prevail on a claim for overtime wages under the FLSA, Plaintiff has the burden of showing: "(1) [s]he is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay h[er] . . . overtime wages." Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc., 494 F. App'x 940, 942 (11th Cir. 2012) (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)). Defendants argue they are entitled to summary judgment on Plaintiff's claim because (1) Plaintiff is an independent contractor, not an employee under the FLSA, and (2) Plaintiff has failed to show she worked overtime hours without compensation.[5] (See Doc. 37-2.)

### A. Employee or Independent Contractor

Pursuant to the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d). Additionally, "employ" means "to suffer or permit to work." Id. § 203(g). "These definitions are intended to be 'comprehensive enough' to include 'working relationships, which prior to this Act, were not deemed to fall within an employer-employee

---

[5] The Parties do not dispute that Quality Care engaged in interstate commerce.

6

category.'" Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947)). However, "[t]hese 'broad' definitions do not . . . bring 'independent contractors' within the FLSA's ambit." Id. (citing Rutherford Food, 331 U.S. at 728-29).

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence."[6] Id. (citing Bartels v. Birmingham, 332 U.S. 126, 130 (1947)). "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" Id. (quoting Rutherford Food, 331 U.S. at 729). Courts use the following factors as a guide when applying the economic reality test:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
(4) whether the service rendered requires a special skill;

---

[6] The Eleventh Circuit refers to this as the "economic reality" test. See Freeman, 494 F. App'x at 942.

7

  (5) the degree of permanency and duration of the working relationship; [and]
  (6) the extent to which the service rendered is an integral part of the alleged employer's business.

Id. at 1312. These factors "are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected." Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1311 (5th Cir. 1976).[7] "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." Id. (citing Mednick v. Albert Enters., Inc., 508 F.2d 297 (5th Cir. 1975)).

  1. Degree of Control

  "The first factor considers the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." Scantland, 721 F.3d at 1313. "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." Usery, 527 F.2d at 1312-13.

  The Parties dispute nearly every fact relevant to the control of Plaintiff's work. Plaintiff asserts that she was generally required to work from 9:00 A.M. to 5:00 P.M, Monday through Friday.

---

[7] "The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981." Scantland, 721 F.3d at 1311 n.1 (citing Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

(Olden Decl., Doc. 44-1, ¶ 1.) Additionally, she argues she was also required to attend weekly meetings with her supervisors and could not have another job while she worked at Quality Care. (Id. ¶¶ 10-12; Olden Dep., at 16, 37.) Conversely, Defendants argue Plaintiff set her own schedule, was not subjected to training, mandatory meetings, or performance evaluations[8], and that Plaintiff was a full-time student and could choose to work elsewhere. (Doc. 37-2, at 5-6; Olden Dep., at 7, 9, 17; A. McMillan Dep., at 71-73.) The Parties also dispute whether Plaintiff was required to see all of the clients on her caselist or whether she had a choice as to which and how many clients she saw. (Doc. 37-2, at 5; Doc. 44, at 14.) Further, Plaintiff was paid by the hour and the rate of pay was set by Quality Care. (See Doc. 42-17.) However, Defendants assert Plaintiff renegotiated her contract twice. (See Doc. 37-2, at 7.)

Per Plaintiff's contract, she was required to submit timesheets by a certain period, or her compensation would be reduced. (See Doc. 42-16, at 1 ("You will be paid per billable hour, given that 'approved documentation/requirements are successfully submitted per company policy.' You are required to complete all documentation for all services rendered collaboratively . . . . In the event that you do not meet the

---

[8] Whether performance evaluations took place is disputed, but Plaintiff's employment contract states they were required. (See Doc. 42-16, at 1.)

9

submission requirements, you will be compensated at the default hourly base rate of $7.25 hourly, unless otherwise approved by management. If documentation is turned in late on a consistent bases, your contract will be eligible for termination.").) Additionally, the contract stated Plaintiff's work was subjected to "[w]eekly supervision . . . per policy of QCAG, Inc. to meet state standards and policies." (Id.) However, Defendants argue these policies did not apply to Plaintiff. (See A. McMillan Dep., at 16; Q. McMillan Dep., Doc. 38, at 26, 41, 61.)

Finally, the Parties dispute Plaintiff's ability to request time off. Plaintiff argues she was required to give a 60-day notice in writing for any requested leave. (Doc. 42-16, at 7.) Defendants, however, assert Plaintiff was able to take time off without any approval. (Freeman Dep., Doc. 40, at 118.)

Because the majority of the facts relevant to the control factor are in dispute, the Court cannot determine whether control favors employee or independent contractor status.

2. Opportunity for Profit or Loss

"The second factor considers the alleged employee's opportunity for profit or loss depending upon his managerial skill." Scantland, 721 F.3d at 1316. Plaintiff did not have much opportunity for profit or loss. Defendants argue Plaintiff could work elsewhere and was free to see as many clients as she could to increase her profits. (Olden Dep., at 119.) However, Plaintiff's

10

profit or loss at Quality Care was "limited to [her] ability to complete more jobs than assigned, which is analogous to an employee's ability to take on overtime work or an efficient piece-rate worker's ability to produce more pieces." Scantland, 721 F.3d at 1316-17. Plaintiff's "ability to earn more by being more technically proficient is unrelated to [her] ability to earn or lose profit via h[er] managerial skill, and it does not indicate that [s]he operates h[er] own business." Id. at 1317. "As the Supreme Court has explained, a job whose profits are based on efficiency is 'more like piecework than an enterprise that actually depends for success upon the initiative, judgment or foresight of the typical independent contractor.'" Id. (alteration adopted) (quoting Rutherford Food, 331 U.S. at 730).

Additionally, Plaintiff did not bid on jobs and was unable to upsell or offer additional services to Quality Care's clients without prior authorization. (A. McMillan Dep., at 131-32.) Moreover, the rate Quality Care could bill for Plaintiff's services was set by Medicaid. (Q. McMillan Dep., at 75-77.) Although the Parties dispute whether Plaintiff was able to negotiate her pay with Quality Care, the rate set by Medicaid limited those negotiations.

For those reasons, the Court finds Plaintiff's ability for profit or loss was minimal. This factor weighs in favor of employee status.

11

### 3. Investment in Equipment

"The third factor considers the alleged employee's investment in equipment or materials required for his task, or his employment of workers." Scantland, 721 F.3d at 1317. Plaintiff owned most of the equipment she used in performing her services. When Plaintiff worked at Quality Care's office, she used their phone, computer, and copy machine. (Olden Dep., at 17-18.) When she was not at the office, she used her own phone and computer. (Id. at 17.) Additionally, Plaintiff owned her own stethoscope, thermometer, and blood pressure cuff.[9] (Id. at 17-18.)

The Parties do not discuss Plaintiff's required training or on-going education, which is also relevant. Heningburg v. CSS Corp., No. 1:13-CV-2184, 2015 WL 13081182, at *9 (N.D. Ga. Aug. 14, 2015) (finding investment in training, on-going education, and everyday supplies such as scrubs, thermometers, and tape measurers indicative of independent contractor status). Moreover, the Parties dispute whether Plaintiff had the ability to hire a licensed practical nurse ("LPN") to assist her. (Olden. Decl., ¶¶ 18-20; A. McMillan Dep., at 133-34.) There are genuine issues of fact relevant to this factor. Thus, the Court cannot determine whether this factor favors employee or independent contractor status.

---

[9] Plaintiff also used a scale, but the record is unclear as to who owned it.

12

4. <u>Skill Required</u>

"The fourth factor considers whether the service rendered requires a special skill." <u>Scantland</u>, 721 F.3d at 1318. In <u>Hughes v. Family Life Care, Inc.</u>, the court held "[t]he relevant inquiry . . . is whether [the plaintiff] is dependent upon [the defendant] to equip her with the skills necessary to perform her job." 117 F. Supp. 3d 1365, 1372 (N.D. Fla. 2015) (citation omitted). The court found a licensed certified nursing assistant ("CNA") position required "some training" and "certification . . . by the state." <u>Id.</u> Because the plaintiff was "not dependent upon [the defendant] to equip her with the skills necessary to perform her job" the Court determined the skill factor "weighs heavily in favor of contractor status." <u>Id.</u>

Here, Plaintiff is a registered nurse. It is evident she has special skills, which contribute to her economic independence. However, "[w]hile it cannot be denied that the work of a nurse requires highly specialized training and skill, such work in this society is not necessarily a specialty job in the sense that members of the public do not typically seek them out for private or individual engagements[.]" <u>Solis v. A+ Nursetemps, Inc.</u>, No. 5:07-CV-182, 2013 WL 1395863, at *6 (M.D. Fla. Apr. 5, 2013). Moreover, it seems Plaintiff also performed work for Quality Care that did not require her nursing skills. For example, she taught cooking classes, took clients to the farmer's market and health

13

fair for nutritional training, and went to the mall to walk with overweight clients. (Olden Dep., at 93, 103.) Thus, to the extent this factor weighs in favor independent contractor status, it is minimal.

5. Degree of Permanency/ Duration

"The fifth factor considers the degree of permanency and duration of the working relationship." Scantland, 721 F.3d at 1318. "Permanence or a longer duration suggest an employment relationship. Courts have considered the consistency of the work, whether the job was the primary source of employment, and the duration of the relationship." Kellogg v. Fannie's Inc., 467 F. Supp. 3d 1296, 1313 (N.D. Ga. 2020) (quoting Hurst v. Youngelson, 354 F. Supp. 3d 1362, 1366 (N.D. Ga. 2019)).

Defendants argue "Plaintiff's contract with [Quality Care] was for no specific time period and was terminable at will, which is exactly what Plaintiff did, resign at will." (Doc. 37-2, at 9.) As Plaintiff contends, "Georgia follows an at-will employment doctrine." Kinslow v. 5 Star Field Servs. Grp., LLC, No. 1:19-CV-1605, 2021 WL 3493564, at *14 (N.D. Ga. Aug. 9, 2021) (citing H&R Block E. Enters., Inc. v. Morris, 606 F.3d 1285, 1294 (11th Cir. 2010)). Thus, the lack of permanence of Plaintiff's job does not weigh in favor of either party. See id. ("The Court also agree this fact is neutral."); Ingram v. Passmore, 175 F. Supp. 3d 1328, 1337 (N.D. Ala. 2016) ("[B]ecause of the at-will nature of their

employment, the court finds that the permanency and duration factor does not favor either party.").

However, the duration of Plaintiff's employment weighs in favor of independent contractor status because Plaintiff only worked at Quality Care for approximately eight months. See Kinslow, 2021 WL 3493564, at *14 (finding the duration of nine, ten, and fifteen months of work weighs in favor of independent contractor status). Though this factor weighs in favor of independent contractor status, it "is given 'only modest weight in assessing employee status under the FLSA.'" Id. (quoting Kellogg, 467 F. Supp. 3d at 1313).

### 6. Integral Part of Alleged Employer's Business

"The sixth and final factor considers the extent to which the service rendered is an integral part of the alleged employer's business." Scantland, 721 F.3d at 1319. While Plaintiff was employed at Quality Care, she was the only nurse. (Olden Dep., at 19-20.) Since Plaintiff's resignation, Quality Care has operated their business without a nurse on staff and has no immediate plans to hire one. (Freeman Dep., at 14-17.) Plaintiff argues "to be CARF[10] certified, all of Quality Care's consumers needed updated nursing and nutritional assessments[;]" however, Plaintiff does not cite to any support for this contention or explain how this

---

[10] "CARF is an elective accreditation body for rehabilitation providers." (Doc. 44, at 7 n.9.)

15

effects Quality Care's business. (Doc. 44, at 19.) Further, Plaintiff admits "other providers, such as physicians, can provide these services." (Id.) Yet, without a nurse on staff, the services had to be referred out. (Freeman Dep., at 110.)

"The relevant inquiry here considers the proportion of [the defendants'] business that is performed by [the plaintiff], as well as the degree of control over the [plaintiff] as discussed under the 'control' prong." Hughes, 117 F. Supp. 3d at 1373. Here, the Parties did not discuss the "proportion" of Quality Care's business that Plaintiff performed. Additionally, the Court has determined there are disputed facts concerning the amount of control Defendants exerted over Plaintiff. Thus, the Court cannot determine where this factor falls.

7. Weighing the Factors

The Court finds there remains genuine issues of material fact and thus, it cannot rule as a matter of law whether Plaintiff was an independent contractor or employee. These disputed material facts require factual resolution by a jury.[11] See Muller-Davila v. Care Placement Home Health Agency, Inc., No. 8:17-CV-505, 2018 WL 1565457, at *3 (M.D. Fla. Mar. 30, 2018) ("The many disputed, material facts in this record are evident, requiring a factual

---

[11] "[T]he ultimate determination of whether an individual [i]s an 'employee' or an 'independent contractor' under the FLSA [i]s a question of law, and the subsidiary findings underlying that determination [a]re questions of fact." Hughes, 117 F. Supp. 3d at 1369 (citing Patel v. Wargo, 803 F.2d 632, 634 (11th Cir. 1986)).

16

resolution by a jury."); Helm v. J.H. Gatewood Emergency Servs., P.A., No. 8:11-CV-572, 2012 WL 2793134, at *3 (M.D. Fla. July 9, 2012) ("[W]e cannot rule as a matter of law that [the plaintiff] is an independent contractor. It is a matter of fact to be decided by a jury whether [the plaintiff] was an independent contractor or employee."). Therefore, Defendants are not entitled to summary judgment on this issue.

**B. Overtime Hours**

Plaintiff bears the burden of proving she worked overtime without compensation. Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1315 (11th Cir. 2007). However, "[i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment," and it is the employer "who is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed." Id. at 1314 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). Thus, "in situations where the employer has failed to keep records or the records cannot be trusted, the employee satisfies [her] burden of proving that [she] performed work without compensation if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Jackson v. Corr. Corp. of Am., 606 F. App'x 945, 952 (11th Cir. 2015) (per curiam) (citing Allen, 495 F.3d at 1316) (internal quotation marks omitted); see also Mt.

Clemens Pottery, 328 U.S. at 687 ("The solution . . . is not to penalize the employee by denying h[er] any recovery on the ground that [s]he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with h[er] statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA]."). Accordingly, "[t]he employee's burden is not great and the Eleventh Circuit has found an employee can successfully shift the burden of proof by presenting h[er] own testimony indicating the employer's time records cannot be trusted and that [s]he worked the claimed overtime." Centeno v. I & C Earthmovers Corp., 970 F. Supp. 2d 1280, 1287 (S.D. Fla. 2013) (internal quotation marks and citation omitted).

Typically, in FLSA cases, employees or employers *under*report hours worked on time records. In this case, Plaintiff admits to *over*reporting her hours. Moreover, Defendants do not deny this was the policy at Quality Care. Thus, even though Plaintiff's time records are unreliable because they reflect more hours than she actually worked, she has still proven that the Court cannot rely on her time records.

Plaintiff has also put forth evidence that she was not allowed to bill for travel time, which creates an issue of fact to the number of hours she worked. (A. McMillan Dep., at 149.) She also

18

asserts she was required to be on call outside of business hours and attended mandatory weekly meetings that she was not paid for. (Olden Decl., ¶¶ 10-13, 14-16.) The Court is unsure how Plaintiff calculated her estimated overtime, but at this stage in the proceeding, she has shown there are enough material facts in dispute to move forward. Thus, Defendants are not entitled to summary judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**. Accordingly, this case shall proceed to trial.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of September, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA